**Richard O'DONALD, Petitioner,**

v.

**Linda A. O'DONALD, Respondent.**

Family Court of Delaware,
New Castle County.

Submitted March 2, 1981.

Decided April 10, 1981.

James F. Kipp, Wilmington, for petitioner.

A. Gary Wilson, Wilmington, for respondent.

GALLAGHER, Judge.

Before the court for decision is respondent's motion to dismiss petitioner's complaint for specific performance of certain provisions of a separation agreement relating to property. The parties differ as to whether this statutory court has jurisdiction to construe and enforce an agreement between persons formerly spouses dealing with matters other than support.

The parties, following their separation, entered into a written separation agreement. Paragraphs 3 and 19 of the agreement treat disposition of the former marital residence and other personal property. Only these provisions are in issue. Most importantly, even though not now in issue, paragraph 8 of the agreement prescribes petitioner's obligation to furnish child support. When the couple were divorced the agreement was not merged or incorporated into the decree. Neither party requested retention of jurisdiction for ancillary relief since those matters, normally resolved in ancillary proceedings, were resolved by the agreement. After petitioner filed suit for specific performance of the agreement, respondent moved to dismiss the petition alleging that Family Court does not have subject matter jurisdiction to enforce those portions of an agreement concerned exclusively with property disposition.

■ The Family Court is a court of limited jurisdiction. *State ex rel. Colatriano v. Colatriano,* Del.Super., 301 A.2d 531 (1972). This principle was clearly enunciated for this court in *Rosemary K. v. Kevin D.C.,* Del.Fam., 422 A.2d 1272, 1274 (1980):

"... Statutory courts have no authority or jurisdiction, excepting that as conferred upon them by statute, and the authority which is conferred upon them

by statute can be exercised only in the manner as provided by the statute. *In re Thorne*, Del.Super., 93 A. 557 (1915)..."

Thus, any analysis of the court's jurisdiction must begin with a specific statute, here 13 *Del.C.* § 507.

The original statute, 59 *Del.Laws*, c. 567, became effective on July 29, 1974, adding sections 501–507, 511–516 and 521–524, with section 507 reading as follows:

> "507. Jurisdiction in Family Court; Termination of Chancery Jurisdiction.
>
> (a) The Family Court of the State shall have exclusive original jurisdiction over all actions arising under this Chapter. The Court shall have and exercise all other jurisdiction and powers relating to support and separate maintenance actions heretofore possessed by the Chancellor or the Court of Chancery of the State of Delaware.
>
> (b) The jurisdiction of the Court of Chancery in civil actions for separate maintenance is hereby terminated, except for such actions for separate maintenance as· have been commenced in the Court of Chancery prior to the effective date hereof. The Court of Chancery shall retain exclusive jurisdiction over such latter actions."

The statutory preamble has some bearing on the issue to be addressed:

> "WHEREAS, the Court of Chancery has jurisdiction over civil enforcement of the duty of support and the Family Court of the State of Delaware has jurisdiction over criminal enforcement of the duty of support; and
>
> WHEREAS, persons seeking support occasionally institute actions in both courts simultaneously or seek support first in one court and then, if dissatisfied, in the other; and
>
> WHEREAS, to obviate the resulting confusion and duplication of effort it would be desirable to establish a uniform procedure in support actions with original jurisdiction in a single court, and the Family Court is best suited to exercise that jurisdiction."

In *T. v. T.*, No. 75–07–860 (Del.Fam. Aug. 28, 1975), it was held that this court did not have jurisdiction to enforce a separation agreement once the parties were divorced. This particular anomaly (i. e. that Family Court had jurisdiction to enforce separation agreements only until the parties were divorced) was resolved when the legislature passed, and the governor approved, 60 *Del. Laws*, c. 455, effective June 11, 1976, reading as follows:

> "The Court shall have exclusive jurisdiction with respect to construction and enforcement of agreements relating to payments for support between spouses, between persons formerly spouses, between parents and children, and between parents and children's spouses or former spouses."

Resolution of the present controversy depends upon proper interpretation of the above language. The statutory synopsis is useful:

### *Synopsis*

> "In 1974, the General Assembly enacted a new Chapter 5 to Title 13, endeavoring to transfer jurisdiction over disputes relating to support from the Court of Chancery to the Family Court. Conflicting judicial interpretations have raised the question as to whether Chapter 5, as enacted, did transfer jurisdiction to construe and enforce agreements for support which survive the divorce of the parties to such agreements. This amendment clarifies this situation and deals with other types of agreements defining the obligation ˙to support as well as to which similar confusion might arise."

Unfortunately, the statutory language is not free from ambiguity. Several possible interpretations might be suggested: (1) That the court only has the power to construe and enforce the support provisions of the prescribed agreements; (2) that the court has power to construe and enforce all provisions of such agreements provided a provision in the agreement for support is in issue; or (3) that the court has power to construe and enforce all provisions of such

agreements provided there is a provision for support whether or not it is in issue.[1] Respondent argues that (1) produces the proper result under the statutory language, while petitioner contends for (2) as producing that result, arguing that the 1976 statutory amendment would have been superfluous if the net result was only to empower this court to construe and enforce contractual support provisions.

Specifically, the legislature vested in Family Court power to construe and enforce agreements "relating to payments for support" between certain parties. Nowhere in the statute is there any indication of intention to limit the court's jurisdiction to contractual support obligations. Such a reading would give no meaning at all to "relating to", a phrase which is repeated several times in the statute. Spousal and other "family" type agreements inevitably encompass all aspects of the parties' rights, privileges and obligations, and the resulting document should logically be construed and enforced as a whole. The court cannot read the document with tunnel vision, pretending that property disposition has no relationship whatever to the support provisions. An expansive approach to reading the statute is in keeping with the broad equitable authority vested in the Family Court by 10 Del.C. § 925(15):

"In any civil action where jurisdiction is otherwise conferred upon the Family Court, it may enter such orders against any party to the action as the principles of equity appear to require."

While I recognize that our jurisdiction is limited and is a creature of statute, it would appear that the pertinent language of section 507 is sufficiently broad to encompass the present action, particularly when it is read in conjunction with section 925 and in light of the broad general interpretation given the court's jurisdiction in prior cases. See, e. g. Wilderman v. Wilderman, Del. Supr., 330 A.2d 149 (1974), and Mount Pleasant School District v. Warder, Del.Super., 375 A.2d 478 (1977).

The reasoning in Jones v. Dickerson, Del. Ch., 330 A.2d 164 (1974), is most helpful. In that case defendant argued that Family Court lacked jurisdiction to enforce a support agreement related to an adult child. Despite the fact that no specific grant of jurisdiction exists in the statute the court stated at 167:

"...It also seems to make common sense and furthers the legislative intent if support actions for adult children under separate (sic.) agreements are heard in Family Court where other support and separate maintenance actions are heard ...".

Certainly, it also "makes sense" to enforce property dispositions in this court as one aspect of an entire agreement which includes support. We are well acquainted with property disposition by virtue of our jurisdiction to "equitably divide, distribute and assign marital property" at the request of either party under 13 Del.C. § 1513.

Additionally, logic would dictate that actions dealing with spousal or "family" agreements should all be heard in a single court, preferably this court. Acceptance of respondent's contention would mean that support actions based on such agreements would be brought in the Family Court while disputes over property provisions of the same agreements would have to be brought in the Court of Chancery. The result would be a waste of judicial resources, inconvenience to litigants, delay and unwarranted expense.

The question sub judice is not one of first impression in this court. In A.G. and L., Nos. B–503, 489–79 (Del.Fam. Jan. 17, 1980), this court thoroughly reviewed 13 Del.C. § 507 and decisions based on it and concluded:

"...(I)t was the intention of the legislature ... to transfer to this court the jurisdiction and the powers appended thereto over 'property division' and 'separation agreements' between 'spouses' and between 'persons formerly spouses'."

1. I do not address the problem presented by an agreement dealing with property or other matters but not with support. That issue is not presented by the facts before me and I express no opinion concerning it.

All of the foregoing gains immensely in importance when coupled with the meaning attributed to the statute by the bar and the courts of this State in practice since 13 *Del.C.* § 507, was amended in 1976. Chancery gave voice to the general view in *Barrowcliff v. Barrowcliff*, No. 5481 (Del.Chan. Mar. 21, 1979). That case involved a hotly contested dispute over property disposed of under a separation agreement and the vice-chancellor observed that the case "always belonged in the Family Court" and "(f)uture litigation of this magnitude should be waged in the Family Court, where it belongs." He also remarked that he "agreed to take jurisdiction and hear the case rather than recycle the parties to another court, with the accompanying delay that would go therewith. Having reached this decision in good conscience one time, I shall never do it again, regardless of conscience or the delay that may be occasioned to the parties."

In accord with the conviction of the vice-chancellor that enforcement of agreements relating to property should be handled by Family Court, I take judicial notice of the pertinent records revealing that since 1974 parties have not brought such actions in the Court of Chancery. Other than *Barrowcliff*, reluctantly accepted for decision by the vice-chancellor, a survey of cases brought in Chancery Court in recent years reveals none based on separation agreements. On the other hand, without challenge except in *A.G. and L.*, supra., the judges of this court have frequently construed and enforced property and other provisions not involved with support, in spousal or "family" agreements. Such contemporaneous and practical interpretation is recognized as a valid and important method of statutory construction. A. Southerland, Statutory Construction § 49.03 (4th Ed. 1972):

Contemporaneous and practical interpretation.

"Long-continued contemporaneous and practical interpretation of a statute by the executive officers charged with its administration and enforcement, the courts, and the public constitutes an invaluable aid in determining the meaning of a doubtful statute. This rule of construction is closely related to the doctrine that statutes will be given their common and ordinary meaning, since resort to extrinsic sources is one method of determining the meaning given the language of a statute in actual practice. In addition, the use of contemporary and practical interpretation makes for certainty in the law and justifies reliance upon the conduct of public officials...

In construing their own state statutes the courts should take judicial notice of contemporaneous circumstances and usage, although the rule may be different where the construction of local ordinances or regulations and statutes of other states are involved."

The practices of the local bar and the courts themselves amply demonstrate that this statute has been interpreted as conferring jurisdiction on this court over property disputes arising from spousal or "family" agreements. Reliance on such practice is a recognized and persuasive method of statutory construction.

This principle was applied in *Abbott Supply Co. v. Schockley*, Del.Supr., 128 A.2d 794 (1956), aff'd 135 A.2d 607 (1957). There the court dealt with a statute which did not contain an explicit provision dealing with the issue presented. As an aid to construing the statute the court looked to "the accepted law and practice in Sussex County", remarking at 620: Such a generally accepted construction by the bench and bar of Sussex County constitutes a sound basis for the holding below."

I hold that by virtue of 13 *Del.C.* § 507, the Family Court has jurisdiction to construe and enforce the support and/or property and/or other provisions of agreements relating to payments for support between spouses, between persons formerly spouses, between parents and children, and between parents and children's spouses or former spouses. The support need not be for the benefit of a contracting party but may be for the benefit of some other person

or persons such as children. Since the agreement *sub judice* is between persons formerly spouses and contains a provision for support of children, even though that provision is not in issue, respondent's motion to dismiss the petition is denied.

IT IS SO ORDERED.