William F. DOUGLAS and William F. Douglas Company, Intervenors Below, Appellants,

v.

William D. THRASHER, Plaintiff Below, Appellee,

v.

Gloria A. THRASHER, Defendant Below, Appellee.

Supreme Court of Delaware.

Submitted: Dec. 11, 1984.

Decided: Feb. 6, 1985.

John A. Sergovic, Tunnell & Raysor, Georgetown, for appellants.

Howard W. Hudson, Jr., Haller & Hudson, Georgetown, for plaintiff below, appellee.

John T. Jaywork, Hudson, Jones, Jaywork & Williams, Dover, for defendant below, appellee.

Before HERRMANN, C.J., MOORE, and CHRISTIE, JJ.

MOORE, Justice.

This action was filed in the Court of Chancery by the original plaintiff, William P. Thrasher (husband), against his former wife, Gloria A. Thrasher (wife), to compel her to specifically perform a separation agreement relating to her obligation to convey a condominium with clear title to the husband. The intervenors, William F. Douglas and William F. Douglas Company (collectively, Douglas), who bought the property from the husband, seek to assert independent claims to compel the Thrashers to cure an unintended technical defect in the title created by the wife's conveyance to the husband.

The Court of Chancery dismissed the action between the husband and wife for lack of subject matter jurisdiction, and concluded that Douglas' independent claims, asserted by intervention, also failed. Douglas appeals both dismissals. Thus, we address the right of the intervenors to prosecute their independent claims against the original plaintiff and defendant, notwithstanding the trial court's dismissal of the main action.

We agree with the Court of Chancery that it lacked subject matter jurisdiction of the suit between the Thrashers, and therefore affirm that judgment. However, we must reverse the dismissal of Douglas' claims on intervention. In our view Douglas was the real party in interest and the Court of Chancery was the only forum with jurisdiction to entertain his action.

### I.

The husband and wife executed a separation agreement on January 22, 1973, which provided in pertinent part:

... WHEREAS ... the parties deem it in their best interest to enter into this Agreement to formalize said voluntary separation; to settle their respective property rights, the custody and support of their children, the right of Wife to support, maintenance and counsel fees, and all other matters growing out of their marital relationship.

\* \* \* \* \* \*

2. In consideration of the mutual promises contained herein Wife hereby waives, relinquishes, and releases Husband of, and from, any and all claims for alimony, support and maintenance ....

\* \* \* \* \* \*

4. Wife hereby waives, relinquishes and releases Husband of, and from, any and all claims for child support and any other form of maintenance for the minor children excepting, however, those counsel fees and other costs incurred by wife in any action brought against Husband to enforce any provision of this Agreement for the benefit of the minor children.

\* \* \* \* \* \*

5.c. *Wife shall, by such documents as may be necessary, and at her own cost and expense, convey unto Husband, all of her right, title and interest in and to the beach property now owned by them as tenants by the entirety, in fee simple, and located on Carolina Street, Rehoboth Beach, Rehoboth-by-the-Sea, Delaware.* Wife agrees to convey said property to Husband free and clear of any and all liens and encumbrances on the property as of the date of this Agreement. (Emphasis added).

Pursuant to paragraph 5.c. above, the wife signed a quit-claim deed purporting to convey to the husband all her right, title and interest in the Rehoboth Beach property, a condominium. Thereafter, on May 31, 1975, the husband agreed to transfer this property to Douglas. Before the purchase was completed it was determined that a title defect existed. Instead of holding the condominium in fee simple, the Thrashers' actual form of ownership was a leasehold interest. Rather than signing a quit-claim deed, Mrs. Thrasher should have executed an assignment of lease to her husband. When she learned this, and because of other differences that had arisen between

them since execution of the separation agreement, Mrs. Thrasher refused to sign anything without further concessions from the husband. However, Douglas still agreed to buy the property under a special warranty deed, with a further agreement that the husband would cure the title defect. Settlement was held on November 18, 1975. In September, 1976, Mr. Thrasher filed this suit in the Court of Chancery to compel specific performance of the settlement agreement by Mrs. Thrasher. The wife moved to dismiss, alleging that the matter should be heard in the Superior Court, where an action challenging their divorce was then pending. The former Chancellor issued an interim ruling that "the mere pendency of such action at law does not stand in the way of the orderly progress of this action for specific performance, a purely equitable remedy cognizable only in this Court".

On October 10, 1977, Douglas moved to intervene in the Chancery action, and was allowed to do so in May 1978. Pursuant to the order granting leave to intervene, Douglas filed independent actions against both the husband, and wife, seeking a marketable title to the leasehold estate in Rehoboth. Among the relief sought was the appointment of a master to execute an appropriate conveyancing instrument to cure the title defect.

Cross motions for summary judgment eventually were filed in the original action by both the husband and wife. However, by this time the matter had been assigned to a Vice-Chancellor, who requested additional briefing on the court's subject matter jurisdiction in light of 13 *Del.C.* § 507,[1] granting the Family Court exclusive jurisdiction over the construction and enforcement of support agreements.

The case was subsequently assigned to a different Vice-Chancellor, who issued an order after briefing and oral argument dismissing the original action between the husband and wife. The trial court also dismissed Douglas', independent causes of action. However, prior to the issuance of that opinion Mr. Thrasher had died.

## II.

### A.

■ In dismissing the original action for specific performance, the Court of Chancery concluded that pursuant to 13 *Del.C.* § 507, *see* note 1, the Family Court had exclusive jurisdiction to construe and enforce the separation agreement. We agree that, as a general rule, the Family Court has exclusive jurisdiction to settle disputes between a husband and wife as to all portions of a separation agreement that contain support provisions. *See O'Donald v. O'Donald*, Del.Fam., 430 A.2d 800 (1981). Thus, the Vice-Chancellor was correct in concluding that this separation agreement, although dealing with property division issues, inevitably had a relationship to support matters sufficient to bring it within the exclusive jurisdiction of the Family Court. We therefore affirm that ruling.

### B.

However, the trial court erred in refusing to retain jurisdiction over Douglas' separate causes of action against the Thrashers. In its order denying Douglas' Motion for Reargument, the Court of Chancery reasoned that "[a]lthough intervenors may not be able to pursue their claims in

---

1. 13 *Del.C.* § 507 in its present form has been in effect since June 11, 1976 (59 Del.Laws, c. 567, § 1; 60 Del.Laws, c. 455, § 1). It provides in pertinent part:

   (a) The Family Court of the State shall have exclusive original jurisdiction over all actions arising under this chapter. The Court shall have exclusive jurisdiction with respect to construction and enforcement of agreements relating to payments for support between spouses, between persons formerly spouses, between parents and children and between parents and children's spouses or former spouses. The Court shall have and exercise all other jurisdiction and powers relating to support and separate maintenance actions heretofore possessed by the Chancellor or the Court of Chancery of the State.

Family Court, I do not find that to be a sufficient basis to assume jurisdiction over what is fundamentally a dispute between former spouses".

█ The problem with such reasoning is that Douglas was the real party in interest. Only his property rights were at stake. The husband had sold Douglas the Rehoboth property, and the wife, two years before, had made a good faith attempt to convey to her former husband any interest she held in it. Now, the husband is dead, and because of other disputes between the Thrashers, the wife seeks to capitalize on a defect in her conveyance, which she never intended, at the expense of the only parties whose real property interests are affected. Under the circumstances, Douglas has an independent right in equity to insist that the wife cure the defect, and give effect to what she actually intended by her execution of the quit-claim deed. Accordingly, we find that it was error for the trial court to conclude that "nothing would be gained by allowing intervenors' complaint to continue in this Court as a separate action".

█ There are several other reasons for this conclusion: What has been overlooked is that Mr. Thrasher is now dead, and the prosecution of an action in the Family Court on his behalf may present other technical and practical problems. However, Chancery has jurisdiction to reform a document, here the quit-claim deed, to make it conform with the original intent of the parties. *See In re Farm Industries, Inc.,* Del.Ch., 196 A.2d 582, 592 (1963). It is undisputed that both the husband and wife intended that she would relinquish all her right, title and interest to the condominium—and she attempted to do so. However, the document which she executed was technically defective in giving full legal effect to that agreement. Douglas, as the real party in interest, is the one affected by this mistake—a classic circumstance for the exercise of Chancery's jurisdiction:

> Reformation is appropriate, when an agreement has been made, or a transaction has been entered into or determined upon, as intended by all the parties interested, but in reducing such agreement or transaction to writing, either through the mistake common to both parties, or through the mistake of the plaintiff accompanied by the fraudulent knowledge and procurement of the defendant, the written instrument fails to express the real agreement or transaction. In such a case the instrument may be corrected so that it shall truly represent the agreement or transaction actually made or determined upon according to the real purpose and intention of the parties.

3 Pomeroy's Equity Jurisprudence, § 870 (5th edition).

█ The trial court also failed to recognize that it is the only forum with jurisdiction to hear Douglas' suit, since the Family Court has no power to determine claims of third parties against a husband and wife or their property. *Eberly v. Eberly,* Del.Supr., 489 A.2d 433 (1985); *Joseph B.P. v. Kathleen M.P.,* Del.Supr., 469 A.2d 800, 802 (1983). Under the circumstances, Douglas' plight is one which Chancery historically has existed to ameliorate. Moreover, 13 *Del.C.* § 507 (*See supra* note 1), cannot be intended or construed to deny Chancery's authority to grant relief to persons outside the intended jurisdiction of the Family Court. It is a fundamental principle that the Court of Chancery may not be deprived of its inherent equity jurisdiction conferred by *Del. Const.* art. IV, § 10 unless the substituted remedy is both adequate and exclusive. *DuPont v. DuPont,* Del.Supr., 85 A.2d 724, 729–730 (1951); *Pottock v. Continental Can Co.,* Del.Ch., 210 A.2d 295, 296 (1965). No such provision exists here.

The Third Circuit has held that the "discretionary procedure [of retaining jurisdiction over an intervenor's separate action] is properly utilized in a case in which it appears that the intervenor has a separate and independent basis for jurisdiction and in which failure to adjudicate the claim will result only in unnecessary delay". *Fuller v. Volk,* 351 F.2d 323, 329 (3d Cir.1965).

Under this standard the Court of Chancery should have retained jurisdiction over Douglas' causes of action. As we have observed, the trial court was incorrect in concluding that nothing could be gained by allowing the intervenor's complaint to continue in Chancery. Douglas has an independent right against both the husband and wife, and Chancery has jurisdiction to hear and decide all aspects of such claims against them. All that will be accomplished by this dismissal will be to require Douglas to re-file and re-assert the same causes of action alleged upon intervention.

We recognize that the decision to retain jurisdiction over an intervenor's claims is within the trial court's sound discretion. *Fuller v. Volk*, 351 F.2d 323 (3rd Cir.1965). But considering the alternatives here, we must conclude that any other course would be an abuse of discretion. *Daniel D. Rappa, Inc. v. Hanson*, Del.Supr., 209 A.2d 163 (1965); *General Foods Corporation v. Cryo-Maid, Inc.*, Del.Supr., 198 A.2d 681 (1964).

■ Under this standard, and for the reasons stated above, we conclude that the trial court should have retained jurisdiction over Douglas' independent claims. Accordingly, Chancery's dismissal of those claims is reversed. The case is remanded for further proceedings in conformity with this decision.

\*     \*     \*     \*     \*     \*

AFFIRMED In Part; REVERSED And REMANDED In Part.