**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Date Submitted: April 12, 2022
Final Report: June 21, 2022

Dean A. Campbell, Esq.
Law Office of Dean A. Campbell, P.A.
703 Chestnut Street
Milton, Delaware 19968

Susan Huesman Mitchell, Esq.
Mary R. Schrider-Fox, Esq.
Steen, Waehler & Schrider-Fox, LLC
92 Atlantic Avenue, Unit B
Ocean View, Delaware 19970

Michael Coffin (*via U.S. Mail*)
31749 Swamp Road
Dagsboro, Delaware 19939

Kathy Swahn (*via U.S. Mail*)
320 Cedar Street
Pottstown, Pennsylvania 19464

Re: *Yvonne Banks a/k/a Hildegard Banks f/k/a Hildegard Coffin v. Kathleen M.*
*Coffin, Individually and as Executrix of the Estate of Jerry Coffin, Kathy*
*Swahn, Justin Coffin, and Michael Coffin*
C.A. No. 2021-0227-PWG

Dear Counsel and Parties:

Pending before me is a dispute between a former wife and the personal representative of the former husband's estate. The former spouses were divorced in 1981. As part of that divorce, the former spouses entered into a property settlement agreement in 1980, which was litigated previously in the Family Court. Under the property settlement agreement, the former wife agreed to convey certain real property to the former husband in his lifetime, but did not do so, arguing that their agreement changed. The former husband died and, now, the former wife seeks partition of the still-jointly owned property. The personal representative of

the former husband's estate seeks specific performance of the property settlement agreement, among other claims. I find that this Court lacks subject matter jurisdiction to consider the specific performance claim. I recommend that the Court allow the specific performance claim to be transferred to the Family Court, consistent with 10 *Del. C.* § 1902, and that the remaining claims in this matter be stayed, pending resolution of the specific performance claim in the Family Court. This is a final report.

## I. BACKGROUND

On March 16, 2021, Yvonne Banks ("Yvonne") filed a petition ("Petition") seeking partition of properties ("Properties") that she jointly owned with Jerry Coffin ("Jerry"), her ex-husband, and contribution for rents collected on the Properties.[1] Named as respondents were Kathleen Coffin ("Kathleen"), Jerry's spouse at his death, both individually and as personal representative of Jerry's estate ("Estate"), and Kathy Swahn, Justin Coffin ("Justin"), and Michael Coffin, Jerry's children, as Jerry's children.[2] On May 21, 2021, Kathleen and Justin filed a response to the Petition, and the Estate asserted counterclaims, alleging that Yvonne was in breach of the Property Settlement Agreement ("Agreement") she and Jerry entered into on June 22, 1980, and seeking specific performance

---

[1] Docket Item ("D.I.") 1. In this matter involving family members and former family members, I use first names in the pursuit of clarity and intend no disrespect or familiarity.

2

("Enforcement Counterclaim"), or, in the alternative, quiet title over the Properties

through adverse possession.[3]

Yvonne and Jerry were married on May 3, 1966.[4]  Yvonne and Jerry

acquired the Properties during their marriage.[5]  On June 22, 1980, Yvonne and

Jerry entered into the Agreement, in which they agreed that neither party would

"be liable for any support or maintenance."[6]  They also agreed:

> [Yvonne] is to convey all of here[sic] right, title and interest in [the
> Properties] to [Jerry].  [Jerry] is to assume all Mortgages and any
> other liens on the said real estate.  [Jerry] in return conveys the marital
> home to [Yvonne].  [Jerry] is to be responsible for all mortgage
> payments, insurance and taxes on said marital property.  [Jerry] is to
> hold [Yvonne] harmless and indemnify her for any expenses on said
> mortgage.[7]

The Family Court entered a final decree of divorce between Yvonne and Jerry on

November 6, 1981.[8]  The Agreement may or may not have been entered as an

---

[2] *Id.*, ¶¶ 2-11.

[3] D.I. 12.

[4] D.I. 1, ¶ 6.

[5] *Id.*, ¶ 7.  The Properties are identified as a shop and a small house in Dagsboro, Delaware. D.I. 12, ¶¶ 40-41.  Jerry and Yvonne held the Properties as tenants-by-the-entirety until they were converted to tenants-in-common at their divorce. D.I. 1, ¶¶ 7-8, 12; D.I. 12, ¶¶ 7-8.

[6] D.I. 12, Ex. A, § 4.

[7] *Id.*, § 7.

[8] D.I. 30, Ex. A.

Order of the Family Court or incorporated into an Order of the Family Court.[9] On May 31, 1989, Yvonne filed a petition for specific performance of the Agreement ("1989 Petition") against Jerry in the Family Court.[10] On August 10, 1989, the Family Court entered judgment against Jerry on the 1989 Petition.[11]

On or about June 22, 1980, Jerry conveyed his interest in the marital home to Yvonne.[12] Yvonne did not transfer legal title of the Properties to Jerry. Yvonne alleges, "Subsequent to the execution of the [Agreement], [Yvonne] and [Jerry] agreed that the [Properties] would remain in joint names with the intent that the [Properties] would pass to their children upon both their deaths."[13] Kathleen and the Justin deny that any subsequent agreement was reached between Yvonne and Jerry and allege that Yvonne is in breach of the Agreement.[14]

---

[9] *Compare* D.I. 1, ¶ 9 (the Agreement "was not entered as an Order of the Court") *with* D.I. 12, ¶ 9 ("It is neither admitted nor denied that the Agreement was not entered as an Order of the Court."). The Family Court records do not provide any clarity. The only document that remained in the Family Court's archive file from the original divorce proceeding in 1980-1981 was the final decree of divorce. *See* D.I. 30.

[10] D.I. 30, Ex. A. Yvonne's petition for specific enforcement pertained to the issue of whether Jerry paid the children's medical expenses as required under the Agreement. *Id.*

[11] *Id.*

[12] D.I. 12, ¶ 61.

[13] D.I. 1, ¶ 9.

[14] D.I. 12, ¶¶ 8-9.

Jerry died intestate on June 10, 2020.[15]  After Jerry's death, Yvonne asserted a claim for rental income from the Properties in the Register of Wills.[16]  Kathleen on behalf of the Estate rejected this claim for rental income and demanded that Yvonne perform the Agreement.[17]

On June 23, 2021, Yvonne filed a motion seeking dismissal of counterclaim for failure to state a claim and summary judgment on her partition claim ("Motion"), arguing that the Enforcement Counterclaim is barred by laches and that Yvonne is entitled to a decree of partition as a matter of law.[18]  On July 22, 2021, Kathleen and Justin responded to the Motion, asserting that laches is inapplicable and Yvonne's partition claim may be subject to equitable defenses.[19]  Yvonne's September 7, 2021 reply reiterates that laches bars the Enforcement Counterclaim and that the Estate's adverse possession claim cannot succeed.[20]

---

[15] *See* Sussex County Register of Wills Folio No. 20927 ("ROW Folio"), D.I. 1.  Because the Register of Wills is a clerk of the Court of Chancery, filings with the Register of Wills are subject to judicial notice. See 12 *Del. C.* § 2501; Del. R. Evid. 202(d)(1)(C); *Arot v. Lardani*, 2018 WL 5430297, at *1, n. 6 (Del. Ch. Oct. 29, 2018).

[16] *See* ROW Folio, D.I. 7.

[17] *See* ROW Folio, D.I. 9.  The lack of clarity over Jerry's property rights has delayed Kathleen from completing the inventory for the Estate. *See id*., D.I. 10; *id*., D.I. 14; *id*., D.I. 16; *id*., D.I. 18.

[18] D.I. 14; D.I. 15.

[19] D.I. 19.

[20] D.I. 23.

On December 3, 2021, I suggested that this Court lacked subject matter jurisdiction over the Estate's counterclaims to enforce the Agreement and requested supplemental briefing.[21]  Yvonne filed supplemental briefing on December 16, 2021,[22] and the Estate filed supplemental briefing on January 5, 2021.[23]  On March 10, 2022, I requested that the parties provide the divorce records from the Family Court.[24]  On April 12, 2022, Yvonne provided those records that were obtained from Family Court's archives.[25]

## II.    ANALYSIS

### A.    *The Family Court has Subject Matter Jurisdiction over the Enforcement Counterclaim*

There is a threshold issue whether this Court has subject matter jurisdiction over the Estate's counterclaim to enforce the Agreement, in light of 13 *Del. C.* § 507 and the Delaware Supreme Court's ruling in *Douglas v. Thrasher* ("*Douglas*").[26]  Both parties argue that the Court of Chancery has jurisdiction.[27] Yvonne contends that the *Douglas* decision is not on point because the Supreme

---

[21] D.I. 25.

[22] D.I. 26.

[23] D.I. 28.

[24] D.I. 29.

[25] D.I. 30.

[26] 489 A.2d 422 (Del. 1985).

[27] D.I. 26; D.I. 28.

Court reversed the Court of Chancery and this Court can hear the Enforcement Counterclaim under the clean-up doctrine.[28]  She also argues that under *In re Estate of Farren*[29] ("*Farren*") from this Court and *N.W. v. C.W.*[30] from the Family Court this Court has exclusive jurisdiction over the Enforcement Counterclaim because it involves the Estate, not the ex-husband himself.[31]

Kathleen argues that litigation in the Family Court will be difficult because Jerry is dead and the Court of Chancery has jurisdiction over this matter because it involves the administration of an estate.[32]  She recognizes that, in the *Douglas* case, the Supreme Court affirmed the Court of Chancery's holding that it lacked jurisdiction to construe and enforce the separation agreement at issue in that matter,[33] but asserts that *Douglas* is not directly on point because this matter was brought on behalf of the Estate and not Jerry.[34]

"As Delaware's Constitutional court of equity, the Court of Chancery can acquire subject matter jurisdiction over a cause in only three ways, namely, if: (1) one or more of the plaintiff's claims for relief is equitable in character, (2) the

---

[28] D.I. 26.

[29] 131 A.3d 817 (Del. Ch. 2016).

[30] 2017 WL 1294826 (Del. Fam. Mar. 7, 2017).

[31] D.I. 26.

[32] D.I. 28, at 1-2.

[33] *Id.*, at 2 (citing *Douglas*, 489 A.2d 422, 425 (Del. 1985)).

[34] *Id.*, at 2.

plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute."[35]  "Where jurisdiction in equity has become established, a statute creating a remedy at law or removing the obstacles at law on the existence of which equity jurisdiction was originally founded does not oust equity of that jurisdiction, unless the statute affirmatively discloses the legislative intent to make the legal remedy exclusive."[36]

Under 13 *Del. C.* §507, the Family Court has exclusive jurisdiction over disputes involving agreements between future spouses, spouses, and former spouses as follows:

> The Family Court of the State shall have exclusive original jurisdiction over all actions arising under this chapter. The Court shall have exclusive jurisdiction over the construction, reformation, enforcement and rescission of agreements made between future spouses, spouses and former spouses concerning the payment of support or alimony, the payment of child support or medical support, the division and distribution of marital property and marital debts and any other matters incident to a marriage, separation or divorce. The Court shall have jurisdiction to resolve any issues resulting from the construction, reformation, enforcement or rescission of an agreement. In this regard, the Court shall apply the statutory factors set forth in Chapters 5, 6 and 15 of this title. The Court shall have and exercise all other jurisdiction and powers relating to support and separate maintenance actions heretofore possessed by the Chancellor or the Court of Chancery of the State.[37]

---

[35] *Endowment Rsch. Grp., LLC v. Wildcat Venture Partners, LLC*, 2021 WL 841049, at *6 (Del. Ch. Mar. 5, 2021) (citations omitted).

[36] *Boxer v. Husky Oil Co.*, 429 A.2d 995, 998 (Del. Ch. 1981).

[37] 13 *Del. C.* § 507(a).  In 1980, this statutory provision stated:

The Supreme Court interpreted this grant of exclusive jurisdiction in *Douglas*.[38]  In *Douglas*, an ex-husband sued his ex-wife in the Court of Chancery for specific performance of a separation agreement.[39]  The separation agreement included a waiver of spousal support and a division of property, which obligated the ex-wife to transfer to the ex-husband certain rights in real property in Rehoboth Beach, Delaware.[40]  The ex-husband sought specific performance of this obligation because he had contracted to sell the Rehoboth Beach property.[41]  The buyer moved to intervene in the Court of Chancery action to protect his rights in that litigation.[42]  The Court of Chancery transferred the action to the Family Court, holding that the Family Court had exclusive jurisdiction to interpret and enforce the separation agreement because it included a waiver of spousal support that

---

> The Family Court of the State shall have exclusive original jurisdiction over all actions arising under this chapter. The Court shall have exclusive jurisdiction over the construction and enforcement of agreements relating to payments for support between spouses, between persons formerly spouses, between parents and children and between parents and children's spouses or former spouses.  The Court shall have and exercise all other jurisdiction and powers relating to support and separate maintenance actions heretofore possessed by the Chancellor or the Court of Chancery of the State.

13 *Del. C.* § 507(a) (Supp. 1980).

[38] 489 A.2d 422 (Del. 1985).

[39] *Id*. at 424.

[40] *Id*.

[41] *Id*. at 424-25.

[42] *Id*. at 425.

9

formed part of the spouses' bargain when deciding the property division, and also dismissed the buyer-intervenor's claims since they could not be litigated in the Family Court.[43] The ex-husband had died prior to the issuance of the Court of Chancery's opinion.[44] The Supreme Court affirmed the Court of Chancery's transfer of the action, holding that "the Family Court has exclusive jurisdiction to settle disputes between a husband and wife as to all portions of a separation agreement that contain support provisions."[45] But, the Supreme Court reversed the dismissal of the buyer-intervenor's claims, holding that the Court of Chancery could provide relief to the third party in interest.[46]

In *D.B. v. N.E.*,[47] the Family Court analyzed its jurisdiction over a dispute involving the disposition of a deceased ex-husband's retirement investment accounts.[48] The Family Court reasoned that its jurisdiction was limited where the enforcement of a separation agreement would involve distribution of the

---

[43] *Id*. at 425-26.

[44] *Id*. at 425.

[45] *Id*. Banks' argument, that *Douglas* is not on point because the Court of Chancery was reversed, is not persuasive. *See* D.I. 26, at 1-2. The *Douglas* Court affirmed the Court of Chancery's decision that it lacked jurisdiction over the claim between the ex-husband and ex-wife, even after the ex-husband had died and the claim was being prosecuted by the ex-husband's estate. *Douglas*, 489 A.2d at 425.

[46] *Douglas*, 489 A.2d at 425-27.

[47] 2011 WL 5346098 (Del. Fam. Jan. 31, 2011).

[48] *Id*., at *1-2.

decedent's estate, over which the Family Court does not have jurisdiction.[49] It noted that the retirement investment accounts claim only developed after the decedent's death, which distinguished the case from matters involving events that occurred prior to the ex-spouse's death, over which the Family Court does have jurisdiction.[50] And, in *Farren*, the Court of Chancery held that it had concurrent jurisdiction with the Family Court related to child support claims against an estate.[51] The *Farren* Court was called upon to decide whether the administrator of an estate had properly accepted a child support claim based upon a Florida court order.[52] The Court concluded that it could "adjudicat[e] … a claim against an estate based on a support order," because the child support claim was not contested and did not involve any novel issues that would implicate the Family Court's

---

[49] *Id.*, at *2-5.

[50] *Id.*, at *3.

[51] *Farren,* 131 A.3d 817, 832 (Del. Ch. 2016). Similarly in *N.W. v. C.W.*, the Family Court held that it did not have jurisdiction to consider a claim for an elective share against a decedent's estate, finding that the Court of Chancery had exclusive jurisdiction to determine an elective share, even though a pre-nuptial agreement could control the spouse's right to an elective share. 2017 WL 1294826, at *2-3 (Del. Fam. Mar. 7, 2017). The Family Court held that the dispute did not involve unique issues of family law requiring the Family Court's specialized expertise since it "merely seeks to determine the validity of a contract," and related solely to the distribution of an estate, which is within the "purview of the Court of Chancery." *Id.* And, I note that the Court of Chancery has exclusive statutory jurisdiction to adjudicate claims for an elective share. *See* 12 *Del. C.* § 906(a). Here, Yvonne filed a claim for accrued rental income against the Estate in the Register of Wills. *See* ROW Folio, D.I. 7. That claim appears to relate to the partition action, which is stayed pending resolution of the Enforcement Counterclaim in the Family Court.

[52] *Farren*, 131 A.3d at 823-826.

expertise.[53]  If, however, the support order was contested by the executor and involved important questions of family law, the Court of Chancery "likely would stay the estate proceeding so that the Family Court could resolve the dispute."[54]

In this matter, Kathleen, on behalf of the Estate, has claimed specific performance against Yvonne under the Agreement.  Kathleen, standing in Jerry's shoes,[55] claims a right that was held by Jerry in the Agreement, the consideration of which was relinquishing spousal support.[56]  The right to enforce Yvonne's alleged failure to transfer title to the Properties as required by the Agreement existed prior to Jerry's death, and the real parties in interest are the Estate, which can act as Jerry's substitute in enforcing the Agreement, and Yvonne, who is the party claimed to have violated the Agreement and is available to answer to claims in the Family Court.  I conclude that, even though the present dispute relates to property, the "construction, reformation, enforcement and rescission of" the Agreement falls within the Family Court's jurisdiction.[57]

---

[53] *Id*. at 832.

[54] *Id.*

[55] *Id*. ("An executor or administrator generally stands in the decedent's shoes and has no greater or other rights or powers than the decedent would have had if living.") (cleaned up).

[56] D.I. 12, Ex. A, § 4.

[57] *See generally* 13 *Del. C.* § 507(a).

Although both parties argue that the Enforcement Counterclaim is merely a dispute over an estate,[58] I consider that this dispute is about more than claims against an estate that this Court can mathematically calculate without opining on an area of family law.[59] It is about the enforceability of the Agreement under Delaware's family law. And, the Family Court has previously resolved disputes arising under the Agreement, so both Yvonne and Jerry have recognized the Family Court's jurisdiction in resolving disputes related to enforcement of the Agreement.[60] Thus, the Enforcement Counterclaim falls within the Family Court's jurisdiction.[61]

And, in *Farren*, this Court noted that, where it may have concurrent subject matter jurisdiction with the Family Court, it will defer to the Family Court's expertise where claims are contested or where the claims raise important issues of family law.[62] The Enforcement Counterclaim is contested (Yvonne contends that she and Jerry subsequently agreed to modify the term of the Agreement at issue), and would require the court to resolve whether an agreement that waived the right to spousal support, purported to be "binding and conclusive on the parties for all

---

[58] D.I. 26, at 2-3; D.I. 28, at 1-3.

[59] *See Farren*, 131 A.3d 817, 835-838 (Del. Ch. 2016).

[60] *See* D.I. 30, Ex. A.

[61] *See* 13 *Del. C.* § 507(a).

[62] 131 A.3d 817, 832 (Del. Ch. 2016).

13

time,"[63] required written modifications of its terms,[64] and may or may not have been entered or incorporated as an Order of the Family Court, can be enforced by specific performance 40 years after it was executed.[65]  So, I find that there are important issues of family law at stake that caution against this Court resolving that claim.[66]  Therefore, I recommend that the Court sever the Enforcement Counterclaim and, in accordance with 10 *Del. C.* § 1902, allow Kathleen to seek to transfer the Enforcement Counterclaim to the Family Court within 60 days after this Report becomes final.[67]

B.    *The Remaining Claims in this Matter are Stayed Pending Resolution of the Enforcement Counterclaim*

Kathleen argues that if the Court finds it lacks subject matter jurisdiction over the Enforcement Counterclaim, then the partition action and other claims in this Court should be stayed.[68]  Yvonne did not address this issue.[69]

---

[63] D.I. 12, Ex. A, § 20.

[64] *Id.*, § 19.

[65] *See supra* note 10 and accompanying text.

[66] *See Farren*, 131 A.3d at 832 (Del. Ch. 2016).

[67] 10 *Del. C.* § 1902 (actions removed from a court lacking jurisdiction "may be transferred to an appropriate court for hearing and determination, provided that the party otherwise adversely affected, within 60 days after the order denying jurisdiction of the first court has become final, files in that court a written election of transfer").

[68] D.I. 28, at 3.

[69] *See* D.I. 26.

"The Court's right to grant a stay is within the exclusive discretion of the Court. The discretion to issue a stay is inherent in every court and flows from its control over the disposition of cases on its docket."[70] Here, the issues that would remain with this Court – the partition matter and the adverse possession counterclaim – would necessarily depend on the resolution of the Enforcement Counterclaim and its potential effect on the Properties' ownership. Thus, it is appropriate to stay the remaining claims pending resolution of the Enforcement Counterclaim by the Family Court.

### III.  Conclusion

For the reasons set forth above, I recommend that the Court sever the Enforcement Counterclaim and, in accordance with 10 *Del. C.* § 1902, allow Kathleen to seek to transfer that claim to the Family Court within 60 days after this Report becomes final. I also recommend that the Court stay the remaining claims. This is a final master's report, and exceptions may be taken under Court of Chancery Rule 144.

Sincerely,

*/s/ Patricia W. Griffin*
Master Patricia W. Griffin

---

[70] *In re Bay Hills Emerging Partners I, LP*, 2018 WL 3545305, at *2 (Del. Ch. July 23, 2018) (internal quotation marks and citations omitted).