**DEWEY BEACH ENTERPRISES, INC., Petitioner Below, Appellant,**

v.

**BOARD OF ADJUSTMENT OF the TOWN OF DEWEY BEACH, Respondent Below, Appellee.**

No. 465, 2009.

Supreme Court of Delaware.

Submitted: June 2, 2010.

Decided: July 30, 2010.

---

William T. Quillen, Esquire, Kathleen M. Jennings, Esquire (argued), Shawn P. Tucker, Esquire (argued), and Karen V. Sullivan, Esquire, Drinker Biddle & Reath LLP, Wilmington, Delaware; Timothy G. Willard, Esquire, Fugua & Yori, P.A., Georgetown, Delaware, for Appellant.

Max B. Walton, Esquire (argued), Jeremy D. Anderson, Esquire, and Josiah R. Wolcott, Esquire, Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware; Glenn Mandalas, Esquire, Baird Mandalas, LLC, Dover, Delaware, for Appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

BERGER, Justice:

In this zoning appeal we consider whether a proposed commercial and residential development in Dewey Beach, Delaware, must comply with the lot size requirements applicable to residential buildings. The Zoning Code for the Town of Dewey Beach (Zoning Code) identifies structures of mixed residential and commercial use as a separate category of permitted use in the Resort Business district. Mixed use structures are required to satisfy several provisions relating to proportionate size and parking, but there is no express requirement that they comply with residential lot size restrictions. Reading the Zoning Code as a whole, we conclude that residential lot size requirements do not apply to mixed use structures. Accordingly, we reverse.

**Factual and Procedural Background**

In November 2007, Dewey Beach Enterprises (DBE) applied for a building permit to redevelop three parcels, commonly known as Ruddertowne, located on Route

1 in Dewey Beach. The proposed redevelopment would add a mixed commercial and residential structure to the existing restaurants and event center in the Resort Business district. The Dewey Beach Building Inspector, William Mears, reviewed the application and issued a referral letter, which allowed DBE to seek State and County approvals. The Town Solicitor at that time, John Brady, Esq.,[1] agreed with Mears that the redevelopment plan complied with all applicable zoning code requirements. In a letter dated December 24, 2007, Brady reversed his position and advised DBE that it would not receive a building permit because the redevelopment plan did not satisfy the minimum lot area requirements for residential multiunit structures.

DBE appealed to the Board of Adjustment, which upheld the denial of DBE's building permit on July 7, 2008. The Superior Court affirmed the Board's decision on July 30, 2009. This appeal followed.

## Discussion

■ The only real issue on appeal is whether a mixed use structure is subject to the lot area requirements for a residential multiunit structure.[2] Section 185–25G(1)(b) of the Zoning Code provides that the minimum lot area per dwelling unit for a multifamily dwelling is 3600 square feet. In addition, Section 185–53A requires that, "[e]ach unit of a residential multiunit structure . . . comply with the minimum lot area per unit specification in [the Zoning Code.]" The term "multi-family dwelling" is defined, but the term "residential multiunit structure" is not. DBE argues that both terms mean one building devoted entirely to residential use. Under DBE's interpretation, its mixed use structure, which includes both residential and commercial uses, does not qualify under either term and is not subject to the 3600 square feet per dwelling unit minimum lot area. The Board says that a structure is a building, and, under the Code, a "building" includes any part thereof. Thus, the residential part of DBE's building is both a multi-family dwelling and a residential multiunit structure within the meaning of the Zoning Code.

■ The rules of statutory construction are well settled. They are "designed to ascertain and give effect to the intent of the legislators, as expressed in the statute."[3] At the outset, the court must determine whether the provision in question is ambiguous. A statute is ambiguous if it is reasonably susceptible of two interpretations. If it is unambiguous, no statutory construction is required, and the words in the statute are given their plain meaning.[4] Several rules guide courts in the construction of an ambiguous statute:

> [E]ach part or section [of a statute] should be read in light of every other part or section to produce an harmonious whole. Undefined words in a statute must be given their ordinary, common meaning. Additionally, words in a

1. Brady was replaced by Glenn Mandalas, Esq.

2. In addition to its statutory argument, DBE contends that the Board's decision must be reversed because: 1) the Building Inspector is the only official authorized to grant or deny a building permit; and 2) the Board should have been allowed to question Brady as a witness. Those arguments lack merit and are moot. The Board, for its part, contends that

this Court lacks jurisdiction because DBE failed to join an indispensable party—the Town of Dewey Beach. Because the two entities' interests are aligned, we find no merit to this argument.

3. *Chase Alexa, LLC v. Kent County Levy Court,* 991 A.2d 1148, 1151 (Del.2010).

4. *Ibid.*

statute should not be construed as surplusage if there is a reasonable construction which will give them meaning, and courts must ascribe a purpose to the use of statutory language, if reasonably possible.[5]

Keeping these principles in mind, the Court's first task is to determine whether either § 185–25G(1)(b) or § 185–53A is ambiguous. We conclude that § 185–G(1)(b) is not ambiguous because the defined term, "multi-family dwelling", is not reasonably susceptible of two interpretations. Section 185–53A, however, is ambiguous because it uses an undefined term—"residential multiunit structure"—that appears to be synonymous with multi-family dwelling. If it is synonymous, one would expect the statute to use the defined term in order to avoid confusion. The use of a different term suggests a different meaning. Accordingly, we must rely on the rules of statutory construction to ascertain the intended meaning of the term "residential multiunit structure."

The Zoning Code[6], which is Chapter 185 of the Dewey Beach Code, uses terms that are defined in Chapter 1. Several defined terms are important to an understanding of the issue on appeal:

DWELLING—A building or portion thereof ... designed or used exclusively for residential occupancy, but not including trailers, mobile homes, hotels, motels, motor lodges ... or tourist homes.

DWELLING, MULTIPLE–FAMILY—A building designed for or occupied exclusively by two or more families living independently of each other. Multiple-family dwellings shall be considered as apartments, garden apartments, condominiums, duplex or similar structures.

DWELLING UNIT—A room or group of rooms occupied ... as separate living quarters by a single family....

STRUCTURE—Anything constructed or erected, the use of which requires more or less permanent location on the ground....[7]

In addition, the Zoning Code sets forth general rules of construction, including a statement that the word "building" includes any part thereof.[8]

The Zoning Code establishes four zoning districts: Neighborhood Residential, Resort Residential, Resort Business, and Planned Residential. For each district, the Zoning Code lists permitted uses as well as height, area and bulk requirements. The Neighborhood Residential district provides for "medium density" residential development, and permits only detached single-family dwellings, parks, and churches[9]. The minimum lot size is 5,000 square feet. The Resort Residential district provides for greater density residential development, and permits multi-family dwellings. The basic minimum lot size remains 5,000 square feet, but for "townhouses or multifamily dwellings on a single lot" the minimum lot size is 3,600 square feet per dwelling unit.[10] The Planned Residential district provides for residential development on large plots of land with a mixture of single-family and multi-family

---

**5.** *Oceanport Industries, Inc., v. Wilmington Stevedores, Inc.,* 636 A.2d 892, 900 (Del.1994) (Citations omitted.).

**6.** The operative Zoning Code for purposes of this appeal is the statute in effect in 2007, and is set forth in substantial part in Appellant's Appendix. The Town of Dewey Beach enacted a new zoning code in 2009.

**7.** § 1–16.

**8.** § 1–15D.

**9.** § 185–23.

**10.** § 185–24F(1).

dwellings. The minimum lot size per dwelling unit is 5,000 square feet.

The Resort Business district is intended to "provide sufficient space in appropriate locations for a wide variety of commercial and miscellaneous service activities not inappropriate for a resort area."[11] Permitted uses include stores, banks, offices and other commercial activities, as well as single-family dwellings, multifamily dwellings, and "structures of mixed commercial and residential use, subject to the mixed use provisions of Articles VI, VII and VIII."[12] The section dealing with height, area and bulk requirements again starts with the basic lot area of 5,000 square feet, and the townhouse and multi-family dwelling requirement of 3,600 square feet per dwelling unit. In addition, it provides for mixed uses:

> Residential/commercial ratio. Whenever a structure of mixed residential and commercial use is built, the residential square footage may not exceed two times the commercial square footage. A mixed use parcel may use the setbacks permitted for Resort Business (RB) Districts.[13]

Nothing in § 185–25 expressly establishes a minimum lot area per dwelling unit for a mixed use structure. But the Board argues that the minimum lot area per dwelling unit requirement for multi-family dwellings applies to the residential portion of a mixed use structure.

■ The term "multi-family dwelling" is defined. It is a building designed for or occupied *exclusively* by two or more families, such as apartments, garden apartments and condominiums. The word "exclusively" means "limited to possession,

control, or use by a single individual or group."[14] A building designed for and occupied by both families and commercial establishments is not exclusively residential, and therefore not encompassed in the definition of a multi-family dwelling. The Board contends that a mixed use building falls within the definition of a multi-family dwelling because the word "building" includes a portion thereof, and the residential portion of a mixed use building is designed for and occupied exclusively by two or more families.

The Board's interpretation, however, fails to reconcile two defined terms. The Code does provide that, as a general rule of construction, the word "building" includes any part thereof. But the fact that the word "building" can be construed to mean a part of a building does not mean that the word "building" always means a part of a building. A dwelling is defined as a "building *or portion thereof*" designed or used exclusively for residential occupancy. A multi-family dwelling is a "building" used exclusively for two or more families, not a "building or portion thereof.". Where, as here, one definition (dwelling) expressly includes a portion of a building, and the other definition (multi-family dwelling) does not, the only logical conclusion is that the word "building" in the definition of a multi-family dwelling means the entire building.

■ Thus, DBE's mixed use structure is not subject to minimum lot area requirements as a "multi-family dwelling" because it is not entirely residential. But § 185–53A also requires a minimum lot area: "[e]ach unit of a residential multiunit structure must comply with the minimum lot area per unit specification in this chap-

---

11. § 185–25A.

12. § 185–25B(2).

13. § 185–25G(6).

14. Merriam–Webster's Collegiate Dictionary, 10th Ed. at 404.

ter." The basic meaning of the term "residential multiunit structure" is simple; it is a building with more than one unit, used for housing. The question, again, is whether the whole building must be residential or only a portion of the building. If a portion of the multiunit structure could · be commercial, one would expect § 185–53A to read, "each residential unit of a multiunit structure must comply...." Thus, of the two possible interpretations of the term, it is more logical to assume that "residential multiunit structure" means a structure that is entirely residential.

■ There is another reason to adopt this interpretation. The Zoning Code identifies a mixed use structure as something distinct from its component uses. A mixed use structure is expressly subject to certain requirements, and, where the requirements for a mixed use structure are determined by combining the requirements for the component uses, the Zoning Code clearly so provides. For example, § 185–25G(6) sets the ratio of residential square footage to commercial square footage in a mixed use structure. Similarly, § 185–36H provides, "[i]n the case of mixed uses ... the parking spaces required shall equal the sum of the requirements of the various uses computed separately." In short, the drafters of the Zoning Code knew how to restrict mixed use structures and did so expressly. Thus, there is no reason to read a mixed use restriction into a provision that, on its face applies to residential structures. Finally, to the extent that there is any doubt as to the correct interpretation, that doubt must be resolved in favor of the landowner.[15]

### Conclusion

Based on the foregoing, the judgment of the Superior Court is hereby reversed and this matter is remanded for further action in accordance with this opinion. Jurisdiction is not retained.

---

15. *Chase Alexa, LLC v. Kent County Levy* *Court*, 991 A.2d 1148, 1152 (Del.2010).