# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| NICOLE LISOWSKI, Individually and as | ) | |
| Next Friend of BRANDON RODRIGUEZ, | ) | |
| JEREMIAH RODRIGUEZ, and | ) | |
| NICHOLAS O'BRIEN, minors, and | ) | |
| JUAN RODRIGUEZ, in his capacity as | ) | |
| Personal Representative of the Estate of | ) | |
| ALEXIS RODRIGUEZ, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. N15C-04-228 ALR |
| | ) | |
| BAYHEALTH MEDICAL CENTER, INC. | ) | |
| d/b/a KENT GENERAL HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: April 22, 2016
Date Decided: May 11, 2016

***Upon Defendant's Partial Motion to Dismiss***
**GRANTED IN PART and DENIED IN PART**

David G. Culley, Esq., Tybout, Redfearn & Pell, Wilmington, Delaware, Attorney for Plaintiffs Nicole Lisowski, *et al.*

Melony R. Anderson, Esq., and James E. Drnec, Esq., Balick & Balick, LLC, Wilmington, Delaware, Attorneys for Defendant Bayhealth Medical Center, Inc.

**ROCANELLI, J.**

## FACTUAL AND PROCEDURAL BACKGROUND

On April 23, 2015, Plaintiffs Nicole Lisowski and Juan Rodriguez filed the present wrongful death and survival action against Defendant Bayhealth Medical Center, Inc. d/b/a Kent General Hospital ("Bayhealth") for Bayhealth's alleged medical negligence that lead to the death of Alexis Rodriguez ("Decedent") on April 25, 2013. While Juan Rodriguez, Decedent's father, filed this action in his capacity as the personal representative to Decedent's estate, Lisowski filed this action in an individual capacity and as the biological mother of minor Plaintiffs Brandon Rodriguez, Jeremiah Rodriguez, and Nicholas O'Brien.

Lisowski and Decedent cohabited, owned a home together, and were in an exclusive relationship for approximately thirteen (13) years. Prior to Decedent's death, Lisowski was Decedent's primary caregiver. It is undisputed that Lisowski and Decedent never participated in any civil or religious marriage ceremony and never obtained a valid marriage license. Indeed, Lisowski and Decedent were never lawfully married in the State of Delaware or elsewhere.

Plaintiffs Brandon Rodriguez and Jeremiah Rodriguez are the biological children of Lisowski and Decedent. Plaintiff Nicholas O'Brien is the biological child of Lisowski; however, Decedent is not Nicholas' biological father nor did Decedent ever formally adopt Nicholas. Instead, Lisowski shares custody of Nicholas with Nicholas' biological father ("O'Brien"), whom Lisowski never

2

married. Lisowski and O'Brien's original custody arrangement began after Nicholas was born in 2000 and consisted of Nicholas living with Lisowski and Decedent during the week and Nicholas living with O'Brien on the weekends and holidays. During this arrangement, O'Brien paid Lisowski child support for Nicholas. In approximately 2011, the custody arrangement between O'Brien and Lisowski changed. Nicholas began living with O'Brien during the week and living with Lisowski and Decedent only on the weekends, holidays, and during summer vacation. This is the present custody arrangement between Lisowski and O'Brien.

On February 16, 2016, Bayhealth filed the present partial motion to dismiss, seeking to dismiss Lisowski and Nicholas, arguing that Lisowski and Nicholas lack standing to pursue this action.

## STANDARD OF REVIEW

In deciding a motion to dismiss, the Court shall accept all well-pleaded allegations as true and make all reasonable inferences in favor of the non-moving party.[1] Factual allegations, even if vague, are well-pleaded if they provide notice of the claim to the other party.[2] The Court should deny the motion if the claimant

---

[1] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978); *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998).
[2] *Spence*, 396 A.2d at 968.

3

"may recover under any reasonably conceivable set of circumstances susceptible of proof."[3]

## DISCUSSION

### A. The Parties' Contentions

Bayhealth argues that neither Lisowski nor Nicholas can pursue this action because they lack standing under 10 *Del. C.* § 3721 *et. seq.* ("Wrongful Death Statute" or "Statute"). Bayhealth contends that the Statute is unambiguous and explicitly limits actions for wrongful death to a decedent's "spouse, parent, child[,] and siblings of the [decedent]."[4] Therefore, Bayhealth argues that Lisowski lacks standing because Lisowski and Decedent were never lawfully married. Similarly, Bayhealth argues that Nicholas lacks standing under the Wrongful Death Statute because Decedent was not Nicholas' biological father and Decedent never stood *in loco parentis* to Nicholas. In contrast, Plaintiffs argue the legislative intent behind the Wrongful Death Statute suggests that Lisowski should be able to proceed in her action considering the nature of her relationship with Decedent and Nicholas can claim damages for mental anguish under the Statute because Decedent stood *in loco parentis* to Nicholas.

---

[3] *Id.*
[4] 10 *Del. C.* § 3724(a).

## B. <u>Rules of Statutory Interpretation</u>

Delaware rules of statutory construction are well-established and are "designed to ascertain and give effect to the intent of the legislators, as expressed in the statute."[5] The Court must first determine whether the statutory provision is ambiguous.[6] The mere fact that parties dispute an interpretation of a statute does not make the statute ambiguous.[7] Instead, a statute is ambiguous if it is "reasonably susceptible of two interpretations"[8] or if "if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature."[9]

When a statute is unambiguous, statutory construction is unnecessary.[10] Rather, the Court should give the words in the statute their plain meaning.[11] Some courts have determined that to give a statutory term its plain meaning is to consider

---

[5] *Delaware Bd. of Nursing v. Gillespie*, 41 A.3d 423, 427 (Del. 2012) (internal citations omitted) ("The goal of statutory construction is to determine and give effect to legislative intent."); *see also Dewey Beach Enterprises, Inc. v. Bd. of Adjustment of Town of Dewey Beach*, 1 A.3d 305, 307 (Del. 2010).

[6] *Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 538 (Del. 2011); *Dewey Beach Enterprises, Inc.*, 1 A.3d at 307.

[7] *Chase Alexa, LLC v. Kent Cty. Levy Court*, 991 A.2d 1148, 1151 (Del. 2010).

[8] *Taylor*, 14 A.3d at 538; *Dewey Beach Enterprises, Inc.*, 1 A.3d at 307.

[9] *Delaware Bd. of Nursing*, 41 A.3d at 427.

[10] *See Taylor*, 14 A.3d at 538; *Dewey Beach Enterprises, Inc.*, 1 A.3d at 307.

[11] *See Zhurbin v. State*, 104 A.3d 108, 110 (Del. 2014) (internal citations omitted) ("Where a statute contains unambiguous language that clearly reflects the intent of the legislature, then the language of the statute controls."); *Dewey Beach Enterprises, Inc.*, 1 A.3d at 307 ("If [a statutory provision] is unambiguous, no statutory construction is required, and the words in the statute are given their plain meaning."); *Hoover v. State*, 958 A.2d 816, 819 (Del. 2008) ("If the language of the statute is unambiguous, the plain meaning of the words controls.").

the term's common and/or ordinary meaning.[12]  However, if a statutory provision is ambiguous, then the Court must consider the statute as a whole and read each part "in light of the others to produce a harmonious whole."[13]  If a statutory provision is ambiguous, the Court should read it in such a way to promote its apparent purpose.[14]

## C. Nicole Lisowski does not have standing to bring a claim under the Wrongful Death Statute because she and Decedent were not legally married.

The Wrongful Death Statute provides: "[a]n action under this subchapter shall be for the benefit of the *spouse*, parent, child and siblings of the deceased person."[15]  Although the Statute defines "parent," "child," and "sibling,"[16] the Statute does not define "spouse."  This Court finds that the Wrongful Death Statue with respect to the term "spouse" is unambiguous and, therefore, the Court need not engage in any statutory construction.  Specifically, "spouse" is not reasonably susceptible to more than one interpretation.  Instead, an individual is either a

---

[12] *See, e.g.*, *Nw. Nat. Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 44 (Del. 1996) (considering the common and ordinary meaning of the term "under"); *Moore v. Chrysler Corp.*, 233 A.2d 53, 55 (Del. 1967) ("Words in statutes must be given their common and ordinary meanings."); *State v. Virdin*, 1999 WL 743988, at *3 (Del. Super. Aug. 20, 1999) (finding that "pregnant" has a common and ordinary meaning); *O'Donald v. O'Donald*, 430 A.2d 800, 803 (Del. Fam. Ct. 1981) ("[S]tatutes will be given their common and ordinary meaning[.]").

[13] *Taylor*, 14 A.3d at 538; *Dewey Beach Enterprises, Inc.*, 1 A.3d at 307.

[14] *Delaware Bd. of Nursing*, 41 A.3d at 427.

[15] 10 *Del. C.* § 3724(a) (emphasis added).

[16] *See* 10 *Del. C.* § 3721.

spouse or not – married or not.[17]   Indeed, "spouse" has a common or ordinary meaning.  Black's Law Dictionary defines "spouse" as "[o]ne's husband or wife by lawful marriage; a married person."[18]   Webster's Dictionary defines "spouse" as "someone who is married: a husband of a wife."[19]   Importantly, Delaware does not recognize common law marriage.[20]

In *Boyer v. Irvin*, the Court of Chancery was required to determine the meaning of "surviving spouse" within the context of 12 *Del. C.* § 264 (the rights of others to control the disposition of the remains of a decedent) where "surviving spouse" was undefined.[21]   In defining "surviving spouse," the Court of Chancery concluded: "[G]iven the statutory scheme governing marriage in this State, the Court concludes that 'spouse' in this context must mean a decedent's spouse *pursuant to a lawful marriage* as defined in Title 13, Chapter 1 of the Delaware Code[.]"[22]   Similarly, in *Burris v. PHB, Inc.*, the Superior Court addressed the definition of "surviving spouse" within the meaning of worker's compensation

---

[17] *See Virdin*, 1999 WL 743988, at *3 (determining that the term "pregnant" is unambiguous because, *inter alia*, one is either pregnant or not).

[18] *Spouse*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[19] *Spouse*, MERRIAM-WEBSTER'S DICTIONARY (2016).

[20] *Boyer v. Irvin*, 2007 WL 3119792, at *3 (Del. Ch. Oct. 19, 2007) (noting that Delaware does not recognize common law marriage); *Bradley v. Bradley*, 867 A.2d 193, 195 (Del. Fam. Ct. 2002) (same); *Wilmington Finishing Co. v. Leary*, 2000 WL 303320, at *3 (Del. Super. Mar. 8, 2000) (same); *Harleysville Mut. Cas. Ins. Co. v. Carroll*, 123 A.2d 128, 131 n.3 (Del. Super. 1956) (same).

[21] *Boyer*, 2007 WL 3119792, at *2.

[22] *Id.* (emphasis added).

benefits.[23] The Court determined that "surviving spouse" was unambiguous and deferred to the definitions of "surviving spouse" and "spouse" within Black's Law Dictionary.[24] Accordingly, the Court determined that a woman was not entitled to her ex-husband's worker's compensation benefits when the two were legally divorced at the time of the husband's death.[25]

This Court finds that the Wrongful Death Statute is unambiguous – only those who were married to Decedent at the time of his death can pursue a claim as a "spouse." Moreover, even assuming *arguendo* that the term spouse is ambiguous, the Wrongful Death Statute shows intent to limit the recovery to those related to a decedent by blood or marriage. The Statute specifies that if there are no individuals who qualify as a spouse, parent, child, or sibling, then an action under the Statute "shall be for the benefit of any person related to the deceased person by *blood or marriage*."[26]

Further, the Statute defines "parent," "child," and "sibling" to include various relationships. Specifically, the Statute defines "parent" to include "the

---

[23] *Burris v. PHB, Inc.*, 1999 WL 463715, at *2 (Del. Super. May 14, 1999).

[24] *Id.* (internal citations omitted) (holding:
> The term 'surviving spouse' is not ambiguous nor is it reasonably susceptible to different interpretations. Therefore, deference will be given to common usage. Black's Law Dictionary [1990] defines 'surviving spouse' as '[t]he spouse who outlives (survives) the other spouse.' [Black's Law Dictionary] [1990] further defines 'spouse' as '[o]ne's husband or wife, and 'surviving spouse' is one of a married pair who outlive the other.' The definition given to the term 'wife' is 'a woman united to a man by marriage; a woman who has a husband living and undivorced.')

[25] *Id.*

[26] 10 *Del. C.* § 3724(b)(emphasis added).

mother and father of a deceased illegitimate child";[27] "child" to include "an illegitimate child";[28] and "sibling" to include "brothers and sisters of the whole and half blood or by order of adoption."[29]  Nevertheless, the Statue does not define "spouse."  This Court finds that the failure to define the term spouse was thus intentional and that the General Assembly did not intend to expand the definition beyond its common or ordinary meaning.  This Court cannot assume that the lack of a definition of "spouse" was a mere oversight on behalf of the General Assembly.[30]  Instead, "where [. . .] provisions are expressly included in one part of a statute, but omitted from another, it is reasonable to conclude that the legislature was aware of the omission and intended it."[31]

The Court sympathizes with Lisowski and her loss, especially considering the nature of Lisowski's relationship with Decedent.  Indeed, the Court accepts Lisowski's claim that she was the wife of Decedent in every way even though they were never legally married.  The Court also recognizes and appreciates that, in many respects, the law has developed to adjust to the evolving definition of a

---

[27] 10 *Del. C.* § 3721(2).
[28] 10 *Del. C.* § 3721(1).
[29] 10 *Del. C.* § 3721(4).
[30] *See Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del. 1982) ("We may not assume that the omission was the result of an oversight on the part of the General Assembly.").
[31] *In re Adoption of Swanson*, 623 A.2d 1095, 1097 (Del. 1993) (citing *Giuricich*, 449 A.2d at 238).

9

modern family.[32]  However, the Court's hands are tied with respect to the explicit

language that the General Assembly chose in drafting the Wrongful Death Statute.

Nevertheless, regardless of the Court's views "as to the wisdom of [a] statute, [its]

role as [a] judge[] is limited to applying the statute objectively and not revising

it."[33]  Therefore, where it is undisputed that Lisowski and Decedent were never

lawfully married, Lisowski cannot pursue a claim under the Statute.

**D. There are insufficient facts in the record to determine if Decedent stood *in loco parentis* to Nicholas; therefore, dismissal of Nicholas' claim is inappropriate at this stage in the proceedings.**

The Statute limits the individuals who can seek damages for mental anguish

to the "surviving spouse, children and *persons to whom the deceased stood in loco*

*parentis at the time of the injury which caused the death of the deceased*[.]"[34]

Black's Law Dictionary defines "*in loco parentis*" as "[o]f, relating to, or acting as

a temporary guardian or caretaker of a child, taking on all or some of the

responsibilities of a parent."[35]  Delaware courts have referred to a parent standing

*in loco parentis* as a "person who puts himself in the situation of a lawful parent by

---

[32] *See, e.g.*, 10 *Del. C.* § 901(12) (defining a "family" as "husband and wife; a man and woman cohabiting in a home in which there is a child of either or both; custodian and child; or any group of persons related by blood or marriage who are residing in 1 home under 1 head or where 1 is related to the other by any of the following degrees of relationship, both parties being residents of this State . . . ."); *see also* 13 *Del. C.* § 129 (recognizing equal treatment of marital relationships to same-gender couples and their children).

[33] *In re Adoption of Swanson*, 623 A.2d 1095, 1097 (Del. 1993).

[34] *See* 10 *Del. C.* § 3724(d)(5)(emphasis added).

[35] *In loco parentis*, BLACK'S LAW DICTIONARY (10th ed. 2014).

10

assuming obligations incident to the parental relation without going through the formalities necessary to a legal adoption."[36]

It is undisputed that Decedent was not Nicholas' biological father and Decedent never formally adopted Nicholas. At the time of Decedent's death, Nicholas lived with O'Brien during the week and then lived with Lisowski and Decedent on weekends, holidays, and summer vacations. Decedent never claimed Nicholas as a dependent on any income taxes. Lisowski claimed Nicholas as a dependent on her income taxes until approximately 2011 when O'Brien began claiming Nicholas on his income taxes.

In viewing the facts in the light most favorable to the non-moving party, Plaintiffs, this Court does not have enough information—based on the record presently before it—to determine whether Decedent stood *in loco parentis* to Nicholas at the time of Decedent's death. While the current record develops the relationship between Nicholas and O'Brien, the record does not sufficiently address whether Decedent assumed "obligations incidental to the parental relation"[37] with Nicholas. Accordingly, the Court is not satisfied at this stage in

---

[36] *Trievel v. Sabo*, 1996 WL 944981, at *6 (Del. Super. Mar. 13, 1996); *Gill v. Celotex Corp.*, 565 A.2d 21, 24 (Del. Super. 1989) (internal citations omitted).
[37] *See Trievel*, 1996 WL 944981, at *6.

11

the proceedings that Nicholas cannot "recover under any reasonably conceivable set of circumstances susceptible of proof."[38]

## CONCLUSION

The Wrongful Death Statute provides for a limited number of individuals who may pursue an action under the Statute. With respect to spouses, the Statute is unambiguous and although this Court recognizes that it may produce an unfair result, the Court is bound by the legal meaning of the term "spouse." Because Lisowski and Decedent were never lawfully married, Lisowski cannot recover under the Statute; therefore, Bayhealth's partial motion to dismiss with respect to dismissing Plaintiff Nicole Lisowski must be granted. Moreover, the Statute permits those persons to whom the decedent stood *in loco parentis* to recover damages for mental anguish. The record lacks enough information to determine whether Decedent stood *in loco parentis* to Nicholas; therefore, Bayhealth's partial motion to dismiss with respect to Plaintiff Nicholas O'Brien is denied.

**NOW, THEREFORE, this 11th day of May, 2016, Defendant Bayhealth Medical Center d/b/a Kent General Hospital's partial motion to dismiss is hereby GRANTED IN PART and DENIED IN PART.**

**IT IS SO ORDERED**.

*Andrea L. Rocanelli*

_____

**The Honorable Andrea L. Rocanelli**

---

[38] *Spence*, 396 A.2d at 968.

12