# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NORANDA ALUMINUM HOLDING CORPORATION, | § § § § | |
| Plaintiff-Below, Appellant, | § § § | |
| v. | § § § | No. 443, 2020 Court Below: Superior Court of the State of Delaware |
| XL INSURANCE AMERICA, INC., TALBOT UNDERWRITING SERVICES (US) LTD., FACTORY MUTUAL INSURANCE COMPANY, LIBERTY MUTUAL FIRE INSURANCE COMPANY, LIBERTY SURPLUS INSURANCE CORPORATION, ACE AMERICAN INSURANCE CO., ASPEN INSURANCE UK LTD., STEADFAST INSURANCE COMPANY, AIG EUROPE LIMITED, SCOR UK COMPANY LIMITED, SWISS RE INTERNATIONAL S.E., AND CERTAIN UNDERWRITERS AT LLOYD'S LONDON, | § § § § § § § § § § § § § § § § § § | C.A. No. N17C-01-152 |
| Defendants-Below, Appellees | § § | |

Submitted: September 22, 2021
Decided: December 16, 2021

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

Upon appeal from the Superior Court. **REVERSED**.

David J. Baldwin, Esquire, Peter C. McGivney, Esquire, BERGER HARRIS LLP, Wilmington, Delaware; David B. Goodwin, Esquire, Christine S. Haskett, Esquire, COVINGTON & BURLING LLP, San Francisco, California, *for Plaintiff-Below, Appellant*.

Matthew Denn, Esquire, Kelly Freund, Esquire, John L. Reed, Esquire, DLA PIPER LLP (US), Wilmington, Delaware; Rachel A.H. Horton, Esquire, DLA PIPER LLP (US), Philadelphia, Pennsylvania; Aidan M. McCormack, Esquire, DLA PIPER (US), New York, New York, *for Defendants-Below, Appellees.*

**TRAYNOR,** Justice:

In cases at law, the Superior Court awards judgment interest at the "legal rate" defined by 6 *Del. C.* § 2301(a).  After a jury trial, Noranda, an aluminum-products manufacturer, won a judgment against its insurance companies for more than $28 million.  We affirmed, and the Superior Court awarded Noranda post-judgment interest at 6 percent—*i.e.*, at the same rate as pre-judgment interest—because that was the legal rate in effect when the insurance liability first arose.

On appeal, Noranda argues that the Superior Court should have used an interest rate of 7.5 percent, which was the legal rate on the date judgment was entered.  The difference is worth about $430,000.  We agree.  We hold that, to quote Section 2301(a)'s final sentence, the judgment entered by the Superior Court in Noranda's favor "shall, from the date of the judgment, bear post-judgment interest of 5% over the Federal Reserve discount rate[.]"  Because the Federal Reserve discount rate was 2.5 percent on October 17, 2019—the date the Superior Court entered judgment—we reverse and remand with instructions to award Noranda post-judgment interest at 7.5 percent.

# I

Noranda once operated an aluminum smelter in Missouri but shut it down after two serious accidents.[1] Thirteen different insurers (the "Insurers") had issued Noranda "all risks" policies that covered the accidents, but the parties disagreed about whether Noranda was also covered for certain business-interruption losses.[2] In October 2019, after a jury trial, the Superior Court found that the Insurers owed Noranda about $28 million and entered judgment for that amount.[3] We affirmed.[4]

After our affirmance, the Superior Court awarded Noranda its costs of suit.[5] The judgment apportioned liability among Noranda's 13 insurers and awarded pre-judgment interest.[6] Noranda and the Insurers then conferred to negotiate the applicable rate of post-judgment interest.[7] They could not agree, so Noranda asked the Superior Court to set the rate at 7.5 percent.[8]

---

[1] Unless otherwise noted, we draw the facts from our opinion in *XL Insur. Am. v. Noranda Aluminum Holding Corp.*, 239 A.3d 390, 393 (Del. 2020).

[2] *Id.* at 392.

[3] *Id.* at 398.

[4] *Id.* at 393.

[5] Order Awarding Pl. Costs of Suit at 1–2, App. to Opening Br. at A110–111.

[6] Order and Final J. at 4–5, App. to Opening Br. at A106–107.

[7] Noranda's Mot. re. Post-J. Int. at 2, App. to Opening Br. at A114.

[8] *Id.* at 3, App. to Opening Br. at A115. 7.5 percent represented a Federal Reserve discount rate of 2.5 percent, which was the rate in effect on October 17, 2019 (the date of judgment), plus 5 percent. *Id. See also* International Monetary Fund, *Interest Rates, Discount Rate for United States*, https://fred.stlouisfed.org/series/INTDSRUSM193N (last accessed: December 13, 2021) [hereinafter IMF, *Discount Rate for United States*].

In the Superior Court, all parties acknowledged that 6 *Del. C.* § 2301(a) supplied the method for calculating the post-judgment interest rate. Section 2301(a) provides:[9]

> Any lender may charge and collect from a borrower interest at any rate agreed upon in writing not in excess of 5% over the Federal Reserve discount rate including any surcharge thereon. Where there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due; provided, that where the time from which interest is due predates April 18, 1980, the legal rate shall remain as it was at such time. <u>Except as otherwise provided in this Code, any judgment entered on agreements governed by this subsection, whether the contract rate is expressed or not, shall, from the date of the judgment, bear post-judgment interest of 5% over the Federal Reserve discount rate including any surcharge thereon or the contract rate, whichever is less.</u>

The General Assembly added the underlined language in 2012.[10] The amending legislation, Senate Bill 85, was titled "An Act to Amend Title 6 of the Delaware Code Relating to the Legal Rate of Interest and Judgments."[11] According to a legislative synopsis, "[t]his bill clarifies that the applicable post-judgment interest rate on any judgments entered in cases of personal loans is the lesser of the legal

---

[9] 6 *Del. C.* § 2301(a) (emphasis added).
[10] 78 Del. Laws. Ch. 222 § 2 (S.B. 85). The amended statute took effect on April 5, 2012. *Id.*
[11] *Id.* § 1; Del. Comm. Rep., 2011 Reg. Sess. S.B. 85 (June 8, 2011); *see also* Del. House J., 2011 Reg. Sess. No. 38 (June 16, 2011) (introducing S.B. 85 with same title).

5

interest rate or the contract rate. This bill does not affect the usury statute or other special circumstances contemplated by current law."[12]

In their Superior Court filings, Noranda and the Insurers both adopted the "legal rate" calculation set out in Section 2301(a): 5 percent plus the relevant Federal Reserve discount rate.[13] Noranda maintained that the applicable Federal Reserve discount rate was that in effect on the date judgment was entered: in this case 2.5 percent, which, when added to the statutory baseline of 5 percent, would generate a legal rate of 7.5 percent.[14] The Insurers countered that the correct discount rate was 1 percent—the rate in effect when liability arose—for a legal rate of 6 percent.[15] The difference in these rates was worth about $430,000.[16]

The Superior Court held a hearing on Noranda's motion on December 2, 2020.[17] The court found for the Insurers and awarded Noranda post-judgment interest at 6 percent.[18] The court relied on its 2012 decision in *TranSched Systems Ltd. v. Versyss Transit Solutions, LLC*.[19] *TranSched* concerned a similar interest

---

[12] Del. B. Summ., 2011 Reg. Sess. S.B. 85 (May 31, 2011).

[13] Noranda's Mot. re Post-J. Int. at 2, App. to Opening Br. at A114; Insurers' Post-J. Int. Resp. at 2, App to Opening Br. at A121.

[14] Noranda's Mot. re. Post-J. Int. at 2, App. to Opening Br. at A114. Judgment was entered on October 17, 2019. *Id. See* IMF, *Discount Rate for United States*.

[15] Insurers' Post-J. Int. Response at 2, App to Opening Br. at A121. The Insurers' liability arose on Nov. 12, 2016. Order and Final J. at 3, App. to Opening Br. at A105. *See* IMF, *Discount Rate for United States*.

[16] Opening Br. at 2.

[17] Mot. Hearing Tr. at 1, Dec. 2, 2020.

[18] *Id.* at 7.

[19] *TranSched Sys. Ltd. v. Versyss Transit Solutions, LLC*, 2012 WL 1415466 (Del. Super. Ct. Mar. 29, 2012); Mot. Hearing Tr. at 7, Dec. 2, 2020. (THE COURT: "I read both briefs. You know,

dispute and held that "the relevant statute for this calculation [Section 2301(a)] does not distinguish between pre-and-post-judgment interest. The same interest rate, then, will apply to both . . . calculations."[20] Noranda directed the Superior Court's attention to text in Section 2301(a) that the General Assembly had added after *TranSched* was decided, but the court declined to deviate from its previous decision.[21]

On appeal, Noranda argues that the plain language of Section 2301(a) requires that post-judgment interest be awarded at the prevailing legal rate on the date of judgment.[22] The Insurers raise two counterarguments. *First*, they say that Section 2301(a) does not directly control this case because the statute's text and legislative history limit its application to loans.[23] *Second*, the Insurers argue that "[t]he Superior Court's calculation of post-judgment interest was consistent with forty years of precedent in that Court," which they urge us not to disturb.[24]

---

candidly, I'm not inclined to change the decision that I made in *TranSched*. I noted in that opinion that if there was to be some change in what I had ruled, that it was really a legislative fix that needed to occur, not a judicial one; that I thought I was reading the statute directly. There has been no effort to judicially change it and so I think that my prior decision remains and would be applicable to this case.").

[20] *TranSched*, 2012 WL 1415466, at *6 ("This interest rate remains fixed. It does not . . . incorporate the steady decreases in the federal rate over the span of the pre-judgment period, nor is it recalculated on the day final judgment is entered to determine a different rate post-judgment.") (internal citations omitted)).

[21] Mot. Hearing Tr. at 7–8, Dec. 2, 2020.

[22] Not. of Appeal; Opening Br. at 11.

[23] Answering Br. at 7, 14–15.

[24] *Id.* at 3.

## II

We review a trial court's statutory construction *de novo*.[25]

## III

## A

The central question in this case is the proper interpretation of Section 2301(a). When interpreting a statute, our goal is "to ascertain and give effect to the intent of the legislators, as expressed in the statute."[26] If the plain statutory text admits only one reading, we apply it.[27] If there is a legitimate ambiguity, we consult the canons of statutory construction and may consider legislative history.[28] "Statutory language is ambiguous when it is reasonably susceptible to different conclusions or interpretations[,]"[29] but "[t]he fact that the parties disagree about the meaning of a statute does not create ambiguity."[30] Here, "the text of [the] statute is clear [and] the Court need not go on to consider the act's legislative history."[31]

---

[25] *Del. Bd. of Med. Licensure & Discipline v. Grossinger*, 224 A.3d 939, 951 (Del. 2020).

[26] *Dewey Beach Ent., Inc. v. Bd. of Adjustment of Town of Dewey Beach*, 1 A.3d 305, 307 (Del. 2020); *see also Spintz v. Div. of Fam. Servs.*, 228 A.3d 691, 698 (Del. 2020).

[27] *Dir. of Revenue v. Verisign*, 2021 WL 5563437, at *4 (Del. Nov. 29, 2021) (citing *In re Port of Wilmington Gantry Crane Litig.*, 238 A.3d 921, 937 (Del. 2020)).

[28] *Dewey Beach*, 1 A.3d at 307.

[29] *Judicial Watch v. Univ. of Del.*, 2021 WL 5816692, at *5 (Del. Dec. 6, 2021) (citing *Del. Bd. of Nursing v. Gillespie*, 41 A.3d 423, 427 (Del. 2012)).

[30] *Chase Alexa, LLC v. Kent Cnty. Levy Court*, 991 A.2d 1148, 1151 (Del. 2010); *see also Ins. Com'r of State of Del. v. Sun Life Assur. Co. of Can. (U.S.)*, 21 A.3d 15 (Del. 2011).

[31] *Port of Wilmington*, 238 A.3d at 937.

In our view, the plain, unambiguous meaning of Section 2301(a) supports Noranda's position. The Superior Court was required to award Noranda post-judgment interest at 7.5 percent because that was the legal rate in effect on the date judgment was entered. The Insurers' arguments to the contrary cannot overcome this explicit statutory command.

1

As a textual matter, Section 2301(a) does three things.[32] Sentence one authorizes "[a]ny lender" to "charge and collect" interest from a borrower.[33] Although sentence one comes before sentences two and three of the provision, there is no indication that it cabins the reach of the rest of subsection (a). In fact, we have consistently held that Section 2301(a) directly controls the calculation of judgment interest outside the loan context. In *Watkins v. Beatrice Cos.*,[34] a contract case, we explained that

---

[32] 6 *Del. C.* § 2301(a) provides in full:

> Any lender may charge and collect from a borrower interest at any rate agreed upon in writing not in excess of 5% over the Federal Reserve discount rate including any surcharge thereon. Where there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due; provided, that where the time from which interest is due predates April 18, 1980, the legal rate shall remain as it was at such time. Except as otherwise provided in this Code, any judgment entered on agreements governed by this subsection, whether the contract rate is expressed or not, shall, from the date of the judgment, bear post-judgment interest of 5% over the Federal Reserve discount rate including any surcharge thereon or the contract rate, whichever is less.

[33] *Id.*

[34] *Watkins v. Beatrice Cos.*, 560 A.2d 1016, 1023 (Del. 1989).

Delaware law provides that if a contract is silent as to an interest rate, interest must nonetheless be paid. 6 *Del. C.* § 2301(a) provides that, "[w]here there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate. . . ." The plaintiffs correctly referred to 6 *Del. C.* § 2301(a) in order to calculate interest.

*Watkins* is not an outlier. We have also referred to Section 2301(a) as establishing "the statutory amount" of post-judgment interest in a breach-of-contract dispute.[35] And we have approved the application of Section 2301(a) to "comput[e] an interest award" for a judgment in an insurance case, the same context involved here.[36] The Insurers' claim that Section 2301(a) only applies to loans therefore lacks merit.

Sentence two of Section 2301(a) defines "the legal rate of interest" as the Federal Reserve discount rate plus 5 percent "*as of the time from which interest is due*."[37] The Insurers answer this language only by repeating their claim that Section 2301(a) does not directly apply outside of the loan context.[38] Noranda argues that, for post-judgment interest, "the time from which interest is due" must be the date when judgment was entered, because there can be no interest on a judgment before

---

[35] *Acierno v. Worth Bros. Pipeline Corp.*, 656 A.2d 1085, 1093 (Del. 1995).
[36] *Home Ins. Co. v. Concors Supply Co., Inc.*, 618 A.2d 90, 1992 WL 397455 (Del. 1992) (TABLE). *Home Insurance* held that Section 2301(a) was applicable to the insurance judgment at issue, meaning that future changes to the text of the statute—such as 2012's S.B. 85—would directly control.
[37] 6 *Del. C.* § 2301(a) (emphasis added) ("Where there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due; provided, that where the time from which interest is due predates April 18, 1980, the legal rate shall remain as it was at such time.").
[38] Answering Br. at 8, 14–15.

it exists.[39]  Noranda's position is consistent with the statutory text and with our holding in *Wilmington Country Club v. Cowee* that "[i]nterest on a judgment begins to accrue when the judgment is entered[.]"[40]

The General Assembly added sentence three to Section 2301(a) in 2012.[41]  It requires that applicable agreements "shall, *from the date of judgment*, bear post-judgment interest of 5% over the Federal Reserve discount rate[.]"[42]  The Superior Court considered this language but found that it did not require a reconsideration of the *TranSched* decision. *TranSched* held that Section 2301(a) "does not distinguish between pre-and-post-judgment interest" and applied "[t]he same interest rate . . . to both . . . calculations."[43]  We disagree.  The 2012 addition to Section 2301(a) explicitly requires that post-judgment interest accrue at the legal rate "from the date of judgment"—this is, in the words of sentence two, "the time from which [post-judgment] interest is due."[44]  This statutory text forecloses the use of *TranSched* to

---

[39] Opening Br. at 11–12.

[40] *Wilmington Country Club v. Cowee,* 747 A.2d 1087, 1097 (Del. 2000).

[41] 78 Del. Laws. Ch. 222 § 2 (S.B. 85); 6 *Del. C.* § 2301(a) ("Except as otherwise provided in this Code, any judgment entered on agreements governed by this subsection, whether the contract rate is expressed or not, shall, from the date of the judgment, bear post-judgment interest of 5% over the Federal Reserve discount rate including any surcharge thereon or the contract rate, whichever is less.").

[42] *Id.* (emphasis added).  Section 2301(a) does not limit the interest rate when it is established in a contract "where the amount of money loaned or used exceeds $100,000, and where repayment thereof is not secured by a mortgage against the principal residence of the borrower."  6 *Del. C.* § 2301(c).  In this case, the insurance agreement at issue paid out well more than $100,000, but the parties did not agree to a contract interest rate.  *See* Noranda's Mot. re. Post-J. Int. at 2, App. to Opening Br. at A114.  Accordingly, Section 2301(a) operates to supply the legal rate of interest.

[43] *TranSched*, 2012 WL 1415466, at *6; Mot. Hearing Tr. at 7, Dec. 2, 2020.

[44] 6 *Del. C.* § 2301(a).

support a single rate of interest calculated on the date of liability and extending through final payment.

In sum, Section 2301(a) unambiguously requires that post-judgment interest accrue at the legal rate that was in effect on the date of judgment. Although the first sentence refers to "[a]ny lender," this does not limit the application of the rest of the provision, which we have interpreted as supplying "the statutory amount" of post-judgment interest in contract disputes.[45] When read together, sentences two and three unambiguously mandate that post-judgment interest accrue at the legal rate in effect on the date judgment was entered.

2

The Insurers attack the plain meaning of the Section 2301(a) by citing the synopsis of the amending legislation. We need not consider this argument, of course, because "[i]f the statute is found to be clear and unambiguous, then the plain meaning of the statutory language controls."[46] But, in any case, the Insurers' appeal to history is unavailing.

According to S.B. 85's synopsis, "[t]his bill clarifies that the applicable interest rate on any judgments entered in cases of personal loans is the lesser of the

---

[45] *Acierno*, 656 A.2d at 1093; *Watkins*, 560 A.2d at 1023.
[46] *Judicial Watch*, 2021 WL 5816692, at *5 (quoting *Sun Life Assur. Co. of Can. (U.S.)*, 21 A.3d at 20)).

12

legal interest rate or the contract rate."[47]  The Insurers maintain that this description limits the application of Section 2301(a)'s final sentence to personal loans.[48]  For more support, they refer to our Order in *Delaware Technical & Community College v. Emory Hill & Co.*[49]  Neither that Order nor the legislative history of S.B. 85 supports the Insurers' position.

Beginning with the legislative synopsis, the Insurers quote it accurately but ignore the title of the amending legislation, "An Act to Amend Title 6 of the Delaware Code Relating to the Legal Rate of Interest and Judgments."[50]  This description expresses no limitations on the reach of Section 2301(a).  And it leaves unchanged the statutory title of Section 2301 itself, which reads: "Section 2301. Legal rate; loans insured by Federal Housing Administration."[51]  Thus, were we compelled to look beyond the plain text of Section 2301(a)—and we are not—the Insurers' argument is incomplete and, at best, ambiguous.

---

[47] Del. B. Summ., 2011 Reg. Sess. S.B. 85 (May 31, 2011).  The synopsis also states that "[t]his bill does not affect the usury statute or other special circumstances contemplated by current law." *Id.*

[48] Answering Br. at 16.

[49] *Del. Tech. & Comm. Coll. V. Emory Hill & Co.*, 116 A.3d 1243, 2015 WL 4094410, at *4 (Del. 2015) (TABLE).

[50] *Id.*

[51] We are mindful that "the descriptive headings or catchlines immediately preceding or within the texts of the individual sections of this Code . . . do not constitute part of the law."  1 *Del. C.* § 306. Neither, of course, does the bill synopsis that the Insurers urge us to credit.

Nor does our Order in *Delaware Tech* support the Insurers. At issue in *Delaware Tech* was a $1.2 million construction contract.[52] The Superior Court found a party in breach, and that party alleged that the rate of post-judgment interest—stipulated at 12 percent in the contract—was "statutorily capped by 6 *Del. C.* § 2301(a)[.]"[53] The Superior Court rejected this argument as "com[ing] too late in the game," and we agreed.[54] Although this conclusion was dispositive, we briefly discussed the substance of the breaching party's Section 2301(a) claim and noted that it, too, fell short: the agreement at issue was covered by Section 2301(c), which exempts contracts for more than $100,000 from Section 2301(a)'s cap on negotiated interest rates.[55] It is therefore clear that, though we quoted the legislative synopsis of S.B. 85 in *Delaware Tech*, the interest rate question was not fairly raised and, in any case, the contract was not subject to Section 2301(a). As a result, the Insurers' reliance on *Delaware Tech* is misplaced and cannot override the plain, unambiguous meaning of the statutory text.

---

[52] *Del. Tech.*, 2015 WL 4094410, at *4 n.30; *see also id.*, App. to Opening Br. at A3 (indicating a "Total Contract Amount" of $1,295,094.00).

[53] *Del. Tech.*, 2015 WL 4094410, at *4.

[54] *Id.* at *3 ("Although we address the substantive interest issues below, we find no fault with the Superior Court's conclusion that DTCC's "Contract Rate" arguments 'come too late in the game.'").

[55] *Id.* at *4 n.30 (citing *Sequoia Presidential Yacht Group LLC v. FE Partners*, 2014 WL 2610577, at *2 (Del. Ch. Jun. 12, 2014) (holding that Section 2301(a)'s cap on interest did not apply to a contract for a loan exceeding $100,000, which fell under Section 2301(c))).

B

The Insurers argue that, instead of relying solely on the text of Section 2301(a) and the decisions of this Court that have applied it, we should defer to "forty years of well-reasoned case law" from the Superior Court under *stare decisis* principles.[56] It is true that "the decisions of our State's trial courts . . . are entitled to special weight when they establish a longstanding interpretation that the legislature has failed to question."[57] But even though the Insurers point to a number of Superior Court decisions that once supported their position, it is not true that "the legislature has failed to question" them; on the contrary, the General Assembly amended Section 2301(a) in 2012 in a way that explicitly undercuts the weight of these cases.

The Insurers' lead authority is the Superior Court's 1980 decision in *Rollins Environmental Services, Inc. v. WSMW Indus., Inc.*[58] In *Rollins*, the Superior Court calculated the rate of pre-judgment interest for a contractual liability that arose in 1974.[59] This analysis implicated a different clause of Section 2301(a)—"where the time from which interest is due predates April 18, 1980, the legal rate shall remain as it was at such time"—and therefore did not require the court to interpret the rest

---

[56] Answering Br. at 5.

[57] *Capriglione v. State*, 2021 WL 4538685, at *7 (Del. Oct. 1, 2021); *State v. Barnes*, 116 A.3d 883, 891 (Del. 2015).

[58] *Rollins Environ. Servs., Inc. v. WSMW Indus., Inc.*, 426 A.2d 1363 (Del. 1980).

[59] *Id.* at 1368.

15

of the provision.[60]  Nevertheless, the court offered that "[i]t will be noted that the rate of interest allowed by this Court has been equated to the 'legal rate of interest' found in 6 *Del. C.* § 2301" and explained that "I do not find that [Section 2301(a)] contemplates that interest be segmented."[61]

The Insurers maintain that "*Rollins*'s holding that interest should not be 'segmented' in contract cases has been ratified and applied by the Delaware Superior Court repeatedly in the forty years since it was decided."[62]  As an initial matter, it is far from clear that *Rollins* made any such holding: *Rollins* applied the pre-April 1980 exception to Section 2301(a) and did not need to interpret the rest of the statute. Thus, the best reading of *Rollins*' commentary about segmented interest is that it is *dictum* and "without precedential effect."[63]

That said, the Insurers are correct that a number of Superior Court decisions have cited *Rollins* for the proposition that pre- and post-judgment interest are "calculated using the same rate."[64]  Additionally, a 1992 Order of this Court

---

[60] *Id.* at 1367; 6 *Del. C.* § 2301(a) ("Where there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due; provided, that where the time from which interest is due predates April 18, 1980, the legal rate shall remain as it was at such time.") (emphasis added)).

[61] *Id.* at 1367–1368.

[62] Answering Br. at 9.

[63] *Brown v. United Water Del., Inc.,* 3 A.3d 272, 276–277 (Del. 2010).

[64] *TranSched*, 2012 WL 1415466, at *5–6; *Mobile Diagnostics Inc. v. Lindell Radiology, P.A.*, 1985 WL 189241, at *2 (Del. Super. Ct. Aug. 9, 1985); *see also Getty Oil v. Catalytic, Inc.*, 509 A.2d 1123, 1128 (Del. Super. Ct. 1986); *Chaplake v. Nat'l Grange Mutual Ins.*, 2000 WL 1611080, at *4 (Del. Super. Ct. Aug. 17, 2000); *Chaplake Holdings Ltd. v. Chrysler Corp.*, 2003 WL 22853462, at *5 (Del. Super. Ct. Oct. 30, 2003).

16

described *Rollins* as "settled Delaware law."[65]  But even if these cases, layered on

*dictum*, established "a longstanding interpretation," the problem for the Insurers is

that the legislature has changed the controlling statute.  As we have discussed at

length, in 2012 the General Assembly added a third sentence to Section 2301(a):

> Except as otherwise provided in this Code, any judgment
> entered on agreements governed by this subsection,
> whether the contract rate is expressed or not, shall, from
> the date of the judgment, bear post-judgment interest of
> 5% over the Federal Reserve discount rate including any
> surcharge thereon or the contract rate, whichever is less.

In contract cases where the parties have not agreed to an interest rate, this language

requires trial courts to award post-judgment interest "from the date of judgment" at

"5% over the Federal Reserve discount rate[.]"[66]  This is precisely the rule Noranda

requests.[67]  Put another way, the text of the statute defeats the argument—raised by

the Insurers—that the General Assembly "left the statute materially unchanged" and

"acquiesced" to the rule of *Rollins* and *TranSched*.[68]  As a result, we must apply the

plain text of the amended statute rather than consult cases that interpreted old law.

---

[65] *Home Ins. Co.*, 1992 WL 397455, at *1.

[66] 6 *Del. C.* § 2301(a).

[67] Opening Br. at 13 ("That prejudgment and post-judgment interest must be based on different rates is confirmed by the last sentence of Section 2301(a).").

[68] Answering Br. at 18.  For similar reasons, we reject the Insurers' argument that *Rollins* "equated" the rate of post-judgment interest with the legal rate defined by Section 2301(a), rather than holding that Section 2301(a) "governed" post-judgment interest.  *Id.* at 14.  The apparent significance of this distinction is that, if Section 2301(a) does not directly control judgments outside the loan context, textual changes to the statute might not reach such judgments.  *Id.* at 7, 15.  As discussed above, we read Section 2301(a) to directly control the interest applicable to post-judgment interest in cases at law.  Even if *Rollins* could fairly be read to suggest that Section 2301(a) only influences

17

IV

A litigant who is subject to a judgment at law—which often comprises elements, such as costs and fees, that are not components of the underlying liability—is not responsible for post-judgment interest until judgment is entered. The appropriate rate of interest is the legal rate in effect on that date. This is the clear command of 6 *Del. C.* § 2301(a)'s mandate that such judgments "shall, from the date of the judgment, bear post-judgment interest of 5% over the Federal Reserve discount rate[.]" It was therefore error for the Superior Court to award Noranda post-judgment interest at the pre-judgment rate. We reverse the Superior Court and remand with instructions that Noranda be awarded post-judgment interest at 7.5 percent, the prevailing legal rate as of the date of judgment.

---

judgment interest by "analog[y]," *Rollins* and the follow-on cases are entitled to no weight given the General Assembly's activity in this specific area. Answering Br. at 15.